JUNE TERM, 1894. · 405

Hawkins v. Mitchell et al., Trus. I. I. F. of Fla.—Statement of Case.

A. B. HAWKINS, APPELLANT, VS. H. L. MITCHELL ET AL., TRUSTEES OF THE INTERNAL IMPROVE-MENT FUND OF FLORIDA, APPELLEES.

1. The Trustees of the Internal Improvement Fund of the State of Florida, created by the act of January 6th, 1855, (Chapter 610) known as the Internal Improvement Act, were the agents of the State with respect to said fund, dealing with property of the State devoted to specified purposes under a grant of authority from the Legislature.

2. The relation sustained by the Internal Improvement Fund to the bonded indebtedness of railroads created in accordance with the provisions of the Internal Improvement Act, in so far as interest on said indebtedness is concerned, was that of guarantor to the extent and in the manner authorized by said act.

3. The obligation of the State to pay interest, whether as interest or damages, on debts over due, can not arise unless by the consent and express contract of the State manifested by statute, or in the form authorized by statute.

4. A railroad company, coming within the provisions of the Internal Improvement Act and entitled to the benefits thereof, issued in September, 1857, bonds payable at a limited and fixed time, and bearing interest, evidenced by coupons with fixed amounts and stated times and places for payment to date of maturity, as authorized by said act, and said bonds were also registered and certified by the Trustees of the Internal Improvement Fund as directed by the said act: *Held*, That the said fund was bound as guarantor to pay the interest accruing on the bonds to maturity, as evidenced by the coupons attached, but that said fund was not liable to pay interest on said bonds accruing after their maturity.

Appeal from the Circuit Court for Leon county.

STATEMENT.

The bill in this case was filed by A. B. Hawkins against Henry L. Mitchell, Governor, William D. Bloxham, Comptroller, C. B. Collins, Treasurer, William B. Lamar, Attorney-General, and L. B. Womb-

well, Commissioner of Agriculture, and successor in office of the Register of State Lands, as Trustees of the Internal Improvement Fund, for the purpose of compelling said trustees to pay interest on five bonds. issued by the Florida, Atlantic & Gulf Central Railroad Company, and accruing after their maturity.

The bill sets out the provisions of the act of January 6th, 1855, Chapter 610, known as the Internal Improvement Act, in reference to the issuance of certain bonds by railroads as therein provided, and alleges that the Florida, Atlantic & Gulf Central Railroad Company, a corporation chartered by the Legislature of Florida, came within the provisions of the act, and after signifying its acceptance of the provisions thereof, issued a large number of bonds which were recorded by the Comptroller and the record certified on each bond, and also countersigned by the State Treasurer. Further that complainant became the holder and owner before maturity of five of the said bonds, specified by numbers, issued by said railroad, bearing date the first day of September, 1857, and payable the first day of September, 1892, in the city of New York, with interest at the rate of seven per cent., payable semi-annually on the first days of March and September in each year. Each bond, it is alleged, contains a certificate by the Trustees of the Internal Improvement Fund, dated April 26th, 1859, that it was issued in accordance with the provisions of the act of the Legislature of the State of Florida, passed January 6th, 1855, creating the Internal Improvement Fund, and that said fund was specially pledged to pay the interest on said bonds; and also each of said bonds bears at the head the inscription, "interest guaranteed by special pledge of the Internal Improvement Fund of the State of Florida," and an endorsement, "interest 7 per cent.

guaranteed by the Internal Improvement Fund of the State of Florida.'' It is further alleged that the interest on said bonds from the first day of September, 1892, the date of their maturity, specifying the amount of interest, was due, and that complainant had applied to the said trustees for payment and they had refused to pay the same. Also that by the provisions of the act of 1855 the Internal Improvement Fund was specially charged with the payment of interest on the bonds mentioned, and that the trustees by virtue of said act had received from time to time large sums of money from the sales of lands, and that said money was specially set apart to pay the interest on said bonds, and went into the hands of the trustees as a special trust fund to be used in paying the interest on said bonds.

The further allegation is made that the Florida, Atlantic & Gulf Central Railroad Company failed to provide for the interest on the bonds issued by it, and failed otherwise to comply with the provisions of the Internal Improvement Act, and that the Trustees took possession of said railroad and all of its property and sold the same.

The respondents answered by plea averring that by the provision of the Internal Improvement Act the bonds authorized to be issued thereunder should be coupon bonds having not more than thirty-five years to run, and drawing not more than seven per cent. annual interest, payable semi-annually in the city of New York, or Tallahassee, and that the bonds issued by the Florida, Atlantic & Gulf Central Railroad Company upon which interest was claimed by complainant were coupon bonds, each providing on its face that interest at the rate of seven per cent. per annum on the amounts thereof would be paid semi-annually on

the first days of March and September in each year on the presentation and delivery of the proper coupons thereto attached. It is further averred that the last of the coupons representing the interest on said bonds, as provided for in the act, became due and payable on the first of September, 1892, and that the several coupons representing the semi-annual interest on the said bonds from date to maturity had been presented, delivered and paid.

The case was heard on bill and plea, and a decree rendered sustaining the plea as a good defense, and dismissing the bill. From this decree an appeal was entered by appellant.

Following is a copy of bond number 139; the others are similar to it:

UNITED STATES OF AMERICA.

No. 139. $1,000.

STATE OF FLORIDA.

FLORIDA, ATLANTIC AND GULF CENTRAL RAILROAD COMPANY,

Guaranteed by first lien on the entire road. Interest guaranteed by special pledge of the Internal Improvement Fund of the State of Florida:

Know all men by these presents, That the Florida, Atlantic and Gulf Central Railroad acknowledges itself indebted to J. P. Sanderson or bearer in the sum of one thousand dollars for value received, which sum the said Florida, Atlantic and Gulf Central Railroad Company promises and agrees to pay to J. P. Sanderson or bearer on the first day of September, A. D. eighteen hundred and ninety-two, in the city of New York, with interest thereon at the rate of seven per cent. per annum, payable semi-annually on the first days of March and September in each year on the presentation and de-

JUNE TERM, 1894. 409

Hawkins v. Mitchell et al., Trus I. I. F. of Fla.—Statement of Case.

livery of the proper coupons hereto attached. This bond is one of a series of like tenor and date limited to ten thousand dollars per mile for the purchase of rails, spikes, plates, chairs and equipments, issued in accordance with the act of the Legislature of the State of Florida passed 6th January, eighteen hundred and fifty-five, creating the Internal Improvement Fund of the State of Florida. By the terms of said act these bonds are "a first lien or mortgage on the road-bed, iron, equipments, workshops, depots and franchises" of the company, and for the prompt payment of the interest on these bonds the said Internal Improvement Fund is specially pledged by the State of Florida. And the said Florida, Atlantic and Gulf Central Railroad Company is obliged by the terms of the act of 6th January, 1855, to pay every six months to the Trustees of the Internal Improvement Fund at least one-half of one per cent. on the entire amount of bonds issued, as a sinking fund for the redemption of the present issue of bonds. In witness whereof, the said company has caused this bond to be attested in its behalf by its President and Secretary, and its common seal affixed at its office in Jacksonville, this first day of September, in the year 1857.

J. P. SANDERSON, President.

GEO. L. BRYANT, Secretary.

Issued in accordance with the provisions of the act of the Legislature of the State of Florida, passed 6th January, 1855, creating the Internal Improvement Fund, which fund is specially pledged for the payment of the interest on these bonds.

[SEAL.]

Tallahassee, April 26th, 1859.

M. S. PERRY, Governor,

T. W. BREVARD, Comptroller,

C. H. AUSTIN, Treasurer,

M. D. PAPY, Attorney-General.

D. S. WALKER, Register of Public Lands.

Trustees of the Internal Improvement Fund.

Recorded in the Comptroller's office of the State of Florida.

C. H. AUSTIN, State Treasurer.

T. W. BREVARD, Comptroller.

Endorsed on the back thereof—

United States of America. State of Florida. Florida, Atlantic and Gulf Central Railroad Company. First mortgage bond. No. 139. $1,000. Interest 7 per cent. Guaranteed by the Internal Improvement Fund of the State of Florida. Payable in the city of New York, 1st of March and 1st of September. Redeemable in New York, 1st September, 1892.

*R. W. Williams*, for Appellant.

*Geo. P. Raney* and *Fred. T. Myers*, for Appellees.

MABRY, J.:

The question involved in this appeal is whether or not the Internal Improvement Fund of the State, as set apart and declared by the act of the General Assembly of January 6th, 1855, Chapter 610, known as the Internal Improvement Act, is chargeable with interest on bonds issued under the authority of said act in aid of railroads, and accruing after the maturity of the bonds. A decision of the question necessitates an examination of some of the provisions of the act under which the bonds were issued. In view of the fact that the State had become the grantee of a large landed interest situated within her borders, donated to

her for internal improvements and drainage and re-
clamation of the lands, the General Assembly by the
act referred to devised a scheme of internal improve-
ments in the State, based upon the lands acquired.
The act was passed in obedience to a constitutional
provision declaring a necessity for a liberal system of
internal improvements, and enjoining upon the Gen-
eral Assembly the duty, as soon as practicable, of
ascertaining by law proper objects of improvements in
relation to roads, canals and navigable streams, and of
providing for a suitable application of such funds as
might be appropriated for internal improvements.

The purpose of the act, as disclosed by its title, was
to provide for and encourage a liberal system of in-
ternal improvements in the State. The lands unsold
at the date of the act and the unappropriated proceeds
arising from their sales were, by the first section, set
apart and declared to be a distinct and separate fund,
to be called the Internal Improvement Fund of the
State of Florida, and to be strictly applied according
to the provisions of the act. For the purpose of assur-
ing a proper application of the funds for the purposes
declared, the entire fund was, by the second section,
vested in the Governor, Comptroller, State Treasurer,
the Attorney-General, and Register of State Lands,
and their successors in office, as trustees, with power
to sell the lands to purchasers, receive pay for the same
and invest the proceeds and surplus interest, after pay-
ing certain expenses, in stocks of the United States,
stocks of the several States, or the Internal Improve-
ment bonds issued under the provisions of the act,
drawing not less than six per cent. annual interest.
Authority was also given the trustees to pay out of
said fund agreeably to the provisions of the act the
interest from time to time as it might become due on

412 SUPREME COURT.

Hawkins v. Mitchell et al., Trus. I. I. F. of Fla.—Opinion of Court.

bonds to be issued by the different railroad companies under the authority of the act, and to demand and receive from the said companies the amount due from them to the Internal Improvement Fund according to the provisions contained in the act, on account of interest on the bonds issued. The fourth section declares that certain designated lines of railroad were proper improvements to be aided from the Internal Improvement Fund, and the road issuing the bonds, the interest on which has given rise to the controversy in this suit, falls within the designated lines. Other objects of internal improvement than the construction of railroads are within the contemplation of the general system adopted, but no special reference need be made to them as we have to deal in this case with the bonds issued by a railroad company under the provisions of the act. The sixth section provides that before any railroad company shall be entitled to the provisions of the act, it shall first grade continuously twenty miles according to certain designated specifications; and by the seventh section, after the company had graded twenty miles of continuous road-bed and furnished the crossties agreeably to the specifications in the act and given notice to the State Engineer, it was made his duty to personally examine the said section of twenty miles of road-bed, and if, after full examination, he approved the construction of the same, to certify the fact to the Trustees of the Internal Improvement Fund; and on the completion of the grading and furnishing of cross-ties of each additional ten continuous miles, the State Engineer was required to examine the same, and if constructed in accordance with the provisions of the act, to certify the fact to the trustees. Upon the completion of the grading and furnishing of cross-ties of twenty continuous miles,

JUNE TERM, 1894. 413.

Hawkins v. Mitchell et al., Trus. I. I. F. of Fla.—Opinion of Court.

and every additional ten miles, in accordance with the provisions of the act, the railroad company was authorized by the eighth section to issue coupon bonds, having not more than thirty-five years to run, and drawing not more than seven per cent. annual enterest, payable semi-annually in the city of New York, or Tallahassee, at the option of the purchaser, at the rate of $8,000 per mile, for the purchase and delivery of iron rail, spikes, plates and chairs, and after the rail was laid down on the line, the additional sum of $2,000 per mile for the purchase of the necessary equipments, and said bonds were declared to be a first lien or mortgage upon the road-bed, iron, equipment, work-shops, depots and franchise. A limitation to the bond issue is contained in the thirtieth section, to the effect that no bond shall be issued under the provisions of the act in aid of any part of a railroad not completed at the end of eight years from the passage of the act; and any company failing to grade twenty miles of its road within four years from filing notice of its acceptance of the terms of the act, shall forfeit all rights to its benefits. By the ninth section the company was required to deposit the bonds with the Comptroller of Public Accounts, to be by him recorded and the record certified on each bond, and the State Treasurer was required to enter in a book to be kept for that purpose, the amount of each bond with the rate of interest, the time it would become due and the place where the principal and interest was payable, and countersign the same. It was also made the duty of the Trustees of the Internal Improvement Fund, after having received a certificate from the State Engineer that twenty miles, or ten miles as the case might be, had been graded in all respects as required by the act, to sign said bonds agreeably to the provis-

ions of the act, and deliver them to the company; provided the president and at least four of the directors filed with the trustees a statement under oath that the necessary quantity and quality of iron for the twenty or ten miles as the case might be had been purchased and was within the jurisdiction of the State and paid for, or to be paid for with said bonds or their proceeds; with a further provision that before the trustees delivered the bonds to the railroad company the latter should deposit with the former the first semi-annual installment of interest on the amount of bonds certified to by the trustees, to meet the same when due, or the trustees should retain the coupons for the first semi-annual interest, and the company should also give an approved bond to the trustees that the quality and quantity of iron should be laid down on the line of the road within six months after the bonds were issued. The signing of the bonds by the Trustees of the Internal Improvement Fund, agreeably to the provisions of the act, as directed in the ninth section, has reference to the certificate of the trustees on the bonds required by the third section, wherein it is provided that the bonds shall be recorded by the Comptroller, countersigned by the State Treasurer, and contain a certificate on the part of the Trustees of the Internal Improvement Fund that the bonds were issued agreeably to the provisions of the act, and that the Internal Improvement Fund of which they were trustees was pledged to pay the interest as it may become due on the bonds. The eleventh section made it the duty of the president and directors of every railroad company accepting the provisions of the act, while the road was under construction, to report to the trustees every six months under oath of the president and at least two of the directors, the gross receipts of the company from

the traffic of the road for the past six months, the cost of transportation and repairs, and the total amount of the net receipts of the company; and also the president and directors were required to pay to the trustees fifty per cent. of the said net receipts every six months, which sum or sums the trustees were required to apply towards the payment of interest on any bonds issued by the company.   Provision was made in the thirteenth section that if, on the completion of any of the roads designated in section four of the act, the net earnings should be less than six per cent. on the capital stock paid in and bonded debt of the company, first deducting one per cent., per annum paid into the sinking fund (this fund being provided for in the act to redeem the principal of the bonds), such earnings should be divided *pro rata*, between the stock account paid in and the bonded debt, and the trustees should pay the deficiency due on interest account from time to time as it should fall due.   But in the event the net earnings were over six per cent. on the capital stock paid in and bonded debt and the one per cent. per annum for sinking fund, the president and directors should first pay to the trustees the amount due on the interest account of the bonded debt in addition to the one per cent. for sinking fund.   The fourteenth section provides that for all payments made by the trustees on account of interest for any railroad company, agreeably to the provisions of the act, they should demand and receive from the company equal amounts of the capital stock of said company, which stock should entitle the Internal Improvement Fund to all the privileges and advantages of private stockholders.   Further provision was made in the twenty-seventh section that if the railroad companies indicated in the act shall, for five consecutive years, pay six per cent. on the capital

stock paid in and interest on the bonded debt, and apply the one per cent. annually to the sinking fund, the trustees may apply, under the direction of the Legislature, the annual income arising from the Internal Improvement Fund to other purposes of internal improvement, or to the support of schools, so long as the company shall continue to pay the same. But should any railroad company thereafter fail to provide the interest upon their bonded debt and the one per cent. annually as a sinking fund, the Internal Improvement Fund should pay the deficiency on the interest account from time to time as it may arise.

In addition to the provisions just referred to relating to the payment of interest on the bonds to be issued by railroad companies under the provisions of the act, others are found conferring substantial aid and benefits upon the railroad corporations willing to inaugarate and undertake the desired improvements by means of railroad construction. They will be found in sections 15, 18, 19, 20, 21, 22, 28 and 29. The sinking fund feature to provide a fund to meet the principal of the bond at maturity, to which allusion has been made, should be noticed in so far as it has any bearing upon a legislative purpose, as expressed in the act, to charge the Internal Improvement Fund with interest on the bonds after maturity. Authority was given the trustees by section two to demand and receive, semi-annually, the sum of one-half of one per cent., after each separate line of railroad was completed on the entire amount of the bonds issued by the company and invest the same in stocks of the United States, or State securities, or the bonds authorized by the act to be issued by the company; and it was made the duty of the railroad company, by the twelfth section, after the completion of the road to pay to the trustees at

least one-half of one per cent. on the amount of indebtedness, or bond account, every six months as a sinking fund to be invested by the trustees as above stated, or to be applied to the purchase of outstanding bonds of the company, but with the distinct understanding that the purchase of such bonds shall not relieve the company from paying the interest on the same, and they were to be held by the trustees as an investment on account of the sinking fund. It was also provided that if any such railroad should fail to provide the interest on the bonds authorized to be issued and the one per cent, per annum as a sinking fund, it should be the duty of the trustees after the expiration of thirty days from said default to take possession of said railroad and all its property of every kind, and advertise it for sale at public auction to the highest bidder, either for cash, or additional approved security as they might think most advantageous for the interest of the Internal Improvement Fund and the bondholders. The proceeds of such sale were directed to be applied to the purchase and cancellation of the outstanding bonds of such defaulting company, or incorporated with the sinking fund, with a proviso that the purchasers at such sale should be bound to continue the payment of one-half of one per cent. semi-annually to the sinking fund until all the outstanding bonds were discharged, under penalty of an annulment of the contract of purchase and a forfeiture of the purchase-money paid in.

Sufficient reference to the act has been made to indicate its purpose as to the payment of interest on the bonds issued under its authority by railroad companies. It is not contended that the Internal Improvement Fund is liable for the redemption of the principal of

418        SUPREME COURT.

Hawkins v. Mitchell et al., Trus. I. I. F. of Fla.—Opinion of Court

the bonds in question, it being entirely clear that they, as apparent on their face, contain the obligations of the railroad company, nor is there any claim here that the Internal Improvement Fund has been made liable for interest on the bonds by reason of any default on the part of the trustees to collect the annual sums due from the railroad company to the sinking fund to pay the bonds at maturity as provided in the act. The contention is that the Internal Improvement Fund is primarily liable to pay any and all interest on the bonds as long as they remain unpaid. While it is clear that the Internal Improvement Fund was chargeable with the payment of interest on the bonds to their maturity, it is evident, we think, that the obligation to pay such interest rested primarily upon the railroad company. This is made manifest from a consideration of the entire provisions bearing on the subject, and especially the fourteenth and twenty-seventh sections; the former providing that for all payments made by the trustees on account of interest for any railroad company, equal amounts of the capital stock of such company should be demanded and received by the trustees, and such stock should entitle the Internal Improvement Fund to all the privileges and advantages of private stockholders; and the latter enacting that if the companies accepting the provisions of the act shall, for five consecutive years, pay six per cent. on the capital stock paid in and the interest on the bonded debt, and apply the sum of one per cent. annually to a sinking fund, then the trustees might apply, under the direction of the Legislature, the annual income arising from the Internal Improvement Fund to other purposes of internal improvement, or to the support of schools, so long as the companies should continue to pay said interest. The fact that the Trus-

tees of the Internal Improvement Fund were required to demand and receive interest semi-annually from the railroad and pay it over to the bond-holder, and that when the interest received from the company was not sufficient to pay the interest on the bonds, the trustees were required to pay the deficiency, does not change the relation which they sustained to the railroad company and the bondholders as to the interest due on the bonds. The obvious purpose of the Legislature was to guarantee to those who would invest in the bonds a sure and prompt payment of the interest accruing thereon from time to time as provided in the act, by pledging for that purpose the Internal Improvement Fund. The guarantee to this extent would, of course, strengthen the credit of the bonds in the market, and the sinking fund feature would likewise add to the value of the bonds in giving greater confidence to purchasers from the fact that such a fund had been provided for their redemption, in addition to the lien on the property of the company. The making the bonds a first lien on the property of the company and providing an interest bearing sinking fund of one per cent. per annum on the entire bonded debt of the road to be paid after completion, and the provision for keeping down the current interest on the bonds for the period of thirty-five years, would indicate a legislative view that the bonds would be promptly paid at maturity, and no significance can be given to the sinking fund feature as a provision against liability on the part of the Internal Improvement Fund for interest on the bonds after maturity.

A consideration of the entire Internal Improvement Act has impressed us with the view that the real relation sustained by the Internal Improvement Fund to the bonded debt of railroads created under the act, in so

420    SUPREME COURT.

Hawkins v. Mitchell et al., Trus. I. I. F. of Fla.—Opinion of Court.

far as interest is concerned, was that of guarantor to the extent and in the manner authorized by the act, and whether the guarantee in this respect extends to the payment of interest on the bonds in question must depend upon the provisions of the act and the terms of the guarantee given.

For appellant it is insisted that considering the Internal Improvement Fund as guarantor of interest on the bonds issued in compliance with the act, it should be bound to the full extent of what appears to have been the engagement entered into, and in ascertaining this the words of the guarantee must be taken as strongly in favor of liability as their sense will admit. Drummond vs. Prestman, 12 Wheat., 515; Lawrence vs. McCalmont, 2 How., 426; Douglas vs. Reynolds, 7 Pet., 113; Fell on Guarantees, 129; Pothier on Obligations, 285, 286, are cited in support of this view. The authorities cited have reference to obligations of guarantee between individuals generally. In the matter of guaranteeing the payment of interest on the bonds in the suit before us the Trustees of the Internal Improvement Fund were the agents of the State, acting under a grant of authority from the Legislature, and dealing with property of the State devoted to specified purposes. The fact that the Internal Improvement Fund was irrevocably vested in the trustees named for purposes designated, does not relieve them of the character of State agents in carrying out the purposes of the act, or divest the State of interest in the fund and the action of her trustees in dealing with it. State of Florida vs. Anderson *et al.*, 1 Otto, 667. It was clearly competent for the Legislature to prescribe the limits to which the trustees might go in binding the fund which was vested in them by the State for specified purposes beneficial to the public, and in the cer-

tificate made on the bonds before us by their trustees and their action in reference thereto, there is nothing to show that they undertook to bind the Internal Improvement Fund to any extent not authorized by the act.

For the appellees a strict construction of the act as against the beneficiaries under it is invoked on the well-established rule that grants from the sovereign are strictly construed as against the grantees, and that it will not be presumed that anything was intended to be granted that is not clearly specified by the terms used. State vs. Black River Phosphate Co., 32 Fla., 82, 13 South. Rep., 640; Endlich on Statutory Construction, 354-356. Whatever may be the rule of construction as applied to contracts between the State, or her authorized agents acting for her, and private individuals, considered with reference to the character and subject matter of the contract, the general principle prevails, as contended for by counsel for appellees, that the obligation of the State to pay interest, whether as interest or damages, on debts over due, can not arise unless by the consent and express contract of the State manifested by statute, or in a form authorized by statute. State vs. Thompson, 5 English (10 Ark.), 61; Attorney-General vs. Cape Fear Navigation Co., 2 Ired. (Eq.) 444; Bledsoe vs. State, 64 N. C., 392; United States vs. Sherman, 98 U. S., 565; Angarica vs. Bayard, 127 U. S., 251; United States vs. North Carolina, 136 U. S., 211; Auditorial Board vs. Arles, 15 Texas, 72; State ex rel. vs. Board of Public Works, 36 Ohio St., 409. Applying this rule to the statute under consideration we fail to find any engagement on the part of the Internal Improvement Fund to pay interest on the bonds after maturity. It is apparent that the Internal Improvement Fund was to be chargeable only with

interest on bonds issued in compliance with the act, and from sections eight and nine it is clear that the character of bonds authorized to be issued under it were coupon bonds having not more than thirty-five years to run, and drawing not more than seven per cent. annual interest, payable semi-annually in the city of New York or Tallahassee, at the option of the purchaser. The authority to bind the fund for interest on bonds contained in the second section of the act, is "to pay out of said fund, agreeably to the provisions of this act, the interest, from time to time, as it may become due on the bonds to be issued by the different railroad companies, under authority of this act." Bonds with interest warrants attached designating the amounts of interest and when due (such being the character of coupon bonds), were the only kind provided in the act to be presented to the trustees for their certification, and it was the interest, as evidenced by the coupons attached to the bonds presented, that was guaranteed by the pledge of the Internal Improvement Fund. We discover no purpose in the act to pledge the fund for any interest on the bonds other than that accruing up to maturity and evidenced by coupons with fixed amounts and stated times and places for payment, and for a fixed and expressly limited time. In the case of the United States vs. North Corolina, *supra*, a demand for interest on bonds after the maturity—such bonds having many features like the ones before us—was made, and it was refused by the court. The fact that they were coupon bonds payable semi-annually at fixed times and places naturally relates, as said by the court, to interest before the date fixed for the payment of the principal. The rule that the State was never bound to pay interest unless expressly provided for, was applied.

JUNE TERM, 1894. 423

Hawkins v. Mitchell et al., Trus. I. I. F. of Fla.— Opinion of Court.

A resolution was passed by the Legislature at a session begun in November, 1855, to the effect that the Trustees of the Internal Improvement Fund ought to reserve out of the fund a sufficient sum to pay the interest on all bonds issued for the period of three years from the date of the last payment of interest on said bonds as a safety fund set apart expressly to pay the interest on bonds issed in pursuance of the act, in the event any railroad or canal company for whose benefit the bonds may have been issued should fail to pay the same as prescribed by the act. Reference is made to this resolution by counsel for appellant to support the view that it was within the contemplation of the Legislature in passing the Internal Improvement Act that the fund should pay interest on the bonds after their maturity. In the preamble to the resolution it is recited that it was not the true policy of the Internal Improvement Act that all the Internal Improvement funds should be invested at any time in the bonds authorized to be issued by the act. This resolution does not undertake to change in any way, if it could be so done, the nature of the obligation to be assumed in the issuance of bonds under the Internal Improvement Act, and the safety fund referred to in the resolution was to be set apart expressly to pay the interest on the bonds as provided in the act. The object to be accomplished in the resolution was not to provide for interest on the bonds after maturity, but to have the trustees keep at their command when needed a sum equal to three years' interest in advance, to meet the current interest on the bonds before maturity. There is no recognition in the resolution of any obligation to pay interest on the bonds after maturity.

Our judgment is, that the decree appealed from should be affirmed, and it is so ordered.