WILLIAM A. BROOKS, individually and as Administrator of the Estate of William M. Brooks, deceased, SUE G. BROOKS and CHARLOTTE E. BROOKS AUSTIN, *Appellants*, vs. THE FEDERAL LAND BANK OF COLUMBIA, a corporation duly organized, created and existing under and by virtue of an Act of the Congress of the United States of America, *Appellee*

143 So. 749.

Division A.

Opinion filed August 9, 1932.

Petition for rehearing denied October 10, 1932.

*Thomas Palmer* and *Scofield & Scofield,* for Appellants; *Hull, Landis & Whitehair,* and *Strauss L. Lloyd,* for Appellee.

ELLIS, J.—William M. Brooks in August, 1918, became indebted to the Federal Land Bank of Columbia in the sum of Five Thousand Five Hundred Dollars. That indebtedness was evidenced by the promissory note of Brooks and his wife.

The note by its terms was made payable on an amortization plan in thirty-four annual installments of Three Hundred and Fifty-seven Dollars and Fifty cents each, the first installment payable July 1, 1920, the subsequent installments were payable at the same time in each succeeding year until the principal should be paid. Any installment in which there was a default should bear eight per cent. interest. The Lecanto National Farm Loan Association indorsed the note.

Brooks and his wife in order to secure the payment of the note executed and delivered to the Federal Land Bank of Columbia a mortgage upon certain lands located in Citrus and Hernando Counties. The mortgage was duly recorded in August, 1918. The mortgage contained a covenant that the mortgagors would pay the debt and interest according to the plan described.

Brooks died June 24, 1923, leaving a will but appointed no Executor. He left surviving him a widow, a son, William A. Brooks, and a daughter Charlotte E. Brooks. The testator devised all his property to his widow and children. William A. Brooks was appointed Administrator with the will annexed.

Seven installments were paid, five of them after the death of Brooks and after the appointment of the Administrator. No other installments have been paid. The installments due July 1, 1927, and July 1, 1928, were not paid, so on November 24, 1928, The Federal Land Bank of Columbia exhibited its bill in the Circuit Court for Citrus County to enforce the mortgage lien, making William A. Brooks, individually and as Administrator of

the estate of William M. Brooks, Sue G. Brooks, widow, Charlotte E. Brooks Austin, P. L. Weeks, Letta C. Benjamin as administrator of the estate of George N. Benjamin, The Lecanto National Farm Loan Association and others defendants as having or claiming to have some interest in the premises. Several of the defendants answered averring the ownership by them of claims in the form of statutory liens for services, judgments and mortgages.

William A. Brooks, individually and as Administrator, filed pleas to the bill averring that as Administrator he gave notice to all creditors of William M. Brooks, deceased, to present their claims to the Administrator within two years, the date of the notice being August 4, 1923, that the notice was published for eight weeks consecutively in a weekly newspaper in Citrus County and proof of the publication was made and filed in the Probate Court for Citrus County; that the complainant did not file its claim with the Administrator or with the Probate Court within two years from the date of the notice or at any time thereafter; that the Administrator has never paid or caused to be paid any sums of money upon the indebtedness since the death of W. M. Brooks, therefore the defendant avers that the complainant's claim has become a "non-claim and has become barred, lost, forfeited and extinguished and is no longer a valid and binding debt, demand or claim against the estate."

The defendants Sue G. Brooks, widow, and Charlotte E. Brooks Austin interposed pleas to the same effect.

On the same date the above pleas were filed, February 4, 1929, William A. Brooks, as Administrator, interposed an answer to the bill admitting most of its material allegations as to the note, mortgage, recordation of the latter, but denied that it is a valid claim against the estate because of the statute of non-claim and disclaimed

any knowledge of any payments upon the debt as alleged and averred in substance the same facts as to non-claim as were averred in the plea and that neither the complainant nor any of the other defendants who were alleged to have interests in the premises by reason of liens, judgments or mortgages presented their claims within the two years from the date of the notice or at any time thereafter.

A demurrer was incorporated in the answer. That answer was adopted by William A. Brooks individually, Sue G. Brooks, widow, and Charlotte E. Brooks Austin.

Lengthy motions to strike portions of the different answers filed were interposed. Demurrers to such portions of the answers of Brooks, as Administrator, seeking affirmative relief in the nature of a cancellation of all claims were also interposed and the cause finally came on to be heard upon the sufficiency of the pleas and motions and demurrers, on October 3, 1929.

The Chancellor held the pleas to be insufficient, struck certain portions of the answers setting up the defense of non-claim and the defendants W. A. Brooks, individually and as Administrator, Sue G. Brooks and Charlotte E. Brooks Austin took an appeal from that order as well as from an order on October 29, 1929, referring the cause to a Special Master to take testimony upon the issues remaining as presented by those portions of the answers left in the record.

The substance of this controversy may easily be reduced to the very simple question whether The Federal Land Bank of Columbia, a corporation created by an Act of Congress entitled "The Federal Farm Loan Act," is bound by the statutes of this State relating to nonclaim; if so, is the claim described in the bill such a claim as contemplated by the act and further if both questions are answered in the affirmative was the plea de-

ficient because of the failure to aver when the proof of the publication of the Administrator's notice was filed in the Probate Court.

It is a poor commentary upon the system of pleading as practiced in this State that the lengthy pleading, answers, demurrers and motions to strike should have accumulated to swell the record, entail costs and consume time in order to present the question upon the one phase of the controversy upon which all other matters seem to depend.

Brooks died June 24, 1923. The Administrator published the notice in August, 1923. It was dated August 4th and first published August 10, 1923. Two years from those dates was August 4th, 10th, 1925.

At the time of the death of Brooks, the appointment of the Administrator and the first publishing of the notice to creditors, the statute of non-claim required debts and demands of whatsoever nature against an estate to be presented to the executor or administrator within two years after the first publication of the notice or be forever afterward barred. See Secs. 2398, 2405, Fla. Comp. Laws 1914.

Exception was made in case of infants, persons of unsound mind and certain others in which classes the complainant's claim would not fall.

Before the expiration of the two years from the date of the first publication of the notice Chapter 10119, Laws 1925, approved June 4, 1925, became effective but by its terms any claims or demands against the estate of a decedent where advertisement or notice had theretofore been published or given or was then being published were expressly declared to be not affected by the act. That act required the presentation of the claims to be made to the County Judge at his office in the Court House within one year from the first publication of the

notice. Then came the act, Chapter 11994 Laws 1927, approved June 4, 1927, more than one year and five months before the complainant's bill was filed, but that act also contained the same provision as Chapter 10119, *supra,* in respect of those claims against an estate where notice had been or was being given by the Administrator to creditors.

So it is that Sections 2398, 2405 Fla. Comp. Laws 1914, *supra,* contained the law upon the subject of non-claim which is applicable, if at all, to this case. No provision existed however as in Chapter 11994 Laws of 1927 *supra,* as to the lien of a duly recorded mortgage on real property and the right to foreclose it not being impaired or affected by failure to present the claim to the County Judge or Administrator.

In some jurisdictions the statutes such as these are held to be jurisdictional and unless complied with the court has no power to allow the claim. In re Agee's Estate, 69 Utah 130, 252 Pac. Rep. 891, 50 A. L. R. 641.

In this jurisdiction it has been held that a mortgage by an intestate not presented to the administrator within the statute of non-claim is barred in the absence of payment of interest or other act of estoppel. Fremd v. Hogg, 68 Fla. 331, 67 South. Rep. 75; Tucker v. First Nat. Bank, 98 Fla. 914, 124 South. Rep. 464.

In the latter case the payment of interest upon the mortgage note by the Administrator was held to constitute a waiver by the Executor of formal presentation of the mortgage claim to the County Judge under Chapter 10119, *supra,* where the mortgage lien was shown of record. The value of the opinion consists in establishing the rule that where the mortgage was duly recorded and interest was paid by the Executor within the time required for presentation of claims the Executor is deemed to have waived the presentation.

The plea in this case presents no such situation. The plea avers that the Executor had paid no interest installment, and therefore had not waived presentation.

The failure of the plea to aver the date when the executor filed with the County Judge the proof of publication constitutes no deficiency in the plea. It is not the date of filing the proof of publication from which the statute runs but the date of the first publication of the notice. It was said in the case of First Trust & Savings Bank v. Henderson, 101 Fla. 1437, 136 South. Rep. 370, text 380, that the purpose of the statute under consideration in that case was merely to secure the establishment of the justness of all claims and to facilitate an expeditious settling of the estate. The purpose of Sections 2398, 2405, Fla. Comp. Laws 1914, *supra,* was the same.

According to the plea, the notice was published and proof of the publication of the notice was filed. It could be of no importance that the proof of publication was filed promptly if the statute of non-claim began to run from the date of the first publication if the publication continued for the requisite length of time. If it did not there was no publication within the meaning of the statute. It may be argued that the filing of proof of publication is for the benefit of creditors who may not have seen the published notice and in such case on being informed of the death of the debtor might inspect the records of the County Judge's office to ascertain if notice to creditors had been published and if it had not the creditor might still file his claim within the law. But such reasoning is more specious than sound because the creditor who may have just discovered the death of his debtor would be charged with the notice of the law's requirement as to publication of notice and the running of the statute and diligence would seem to require an immediate filing of the claim regardless of the publication

of notice, but the plea avers that The Federal Land Bank of Columbia did not file its claim in the Probate Court for Citrus County nor with the administrator within two years from the date of the first publication of the notice or at any time thereafter.

The filing of the bill to foreclose which in some jurisdictions is regarded as equivalent to filing the claim with the executor affords no comfort because the bill in this case was filed five years and five months after the death of the mortgagor and five years and more than three months after the publication of the notice. It is apparent from the plea, the averments of which for the purposes of the plea are admitted, that the creditor Bank failed to comply with the requirements of the statute and now seeks the aid of a State court to enforce its claims. The principle is that the limitation of time within which claims may be presented for allowance in the probate court is inseparable from the peculiar procedure prescribed in each jurisdiction. It is part of the procedure and not like a general statute of limitations and can be applied only to persons who are bound by such special mode of procedure. But when the statute of non-claim makes no exception as to any persons or class of persons the courts can make none. 24 C. J. 335.

No question of a trust direct or implied is involved here as was the case in Cone v. Dunham, 59 Conn. 145, 20 Atl. Rep. 311, 8 L. R. A. 647.

In the absence of some provision to the contrary the statutes of non-claim run against non-residents as well as residents. Morgan v. Hamlet, 113 U. S. 449, 28 L. Ed. 1043, 5 Sup. Ct. Rep. 583.

It is of no importance and there seems to be no merit in the contention that the mortgage sought to be foreclosed was a lien upon the land which upon the death of Brooks descended to his wife and children under the statutes of

descent or to them under the terms of his will, the claim originally was a claim against W. M. Brooks and on his death adverse to his administrator. However, the claim may be described as a lien upon the land or a debt against the mortgagor, it is a claim against the estate of Brooks and for which his personal representative was in the first instance liable and the statute is a bar to every such claim unless presented within the time prescribed. See Continental Nat. Bank v. Heilman, 96 Fed. Rep. 514, text 516.

While the jurisdiction of a Federal Court and the methods and principles upon which it is exercised are not to be affected by the legislation of a State, the power of a State legislature to fix a time within which relief is to be sought is generally recognized. See Continental Nat. Bank v. Heilman, *supra*.

The administrator is exclusively bound to account for all assets which he reecives under and by virtue of his administration to the court from which he derives his authority. Even when the United States is compelled to come into court to enforce its rights it must come in as any other suitor. United States v. Hailey, 2 Idaho (Hasb.) 22, 3 Pac. Rep. 263.

It is contended that the note and mortgage sought to be foreclosed are instrumentalities of the United States, therefore the statute of non-claim does not operate against such note and mortgage. It is argued that the Federal Land Bank of Columbia, created by the Federal Farm Loan Act enacted by Congress in 1916, is a Federal agency and the act creating it expressly provides that first mortgages issued under the provisions of the act shall be deemed and held to be instrumentalities of the government of the United States and that such instrumentalities of the United States are not affected by the statute of non-claim.

It is quite clear why any statute which seeks to define the duties and control the conduct of any United States' governmental agency created for a public purpose, or a United States' instrumentality existing pursuant to the activities of such an agency, would be considered to be invalid if such State legislation frustrated the purpose or impaired the efficiency of such instrumentalities or agencies, but such a doctrine is not applicable here. Even if it may be considered that the mortgage in this case and the note which the mortgage was given to secure are instrumentalities of the United States it is difficult to perceive the force of the reasoning which seeks to hold such instrumentalities to be unaffected by State laws. A mortgage in this State is a mere lien upon the property mortgaged. Is the United States exempt from that State law if its Bank takes a mortgage upon real estate?

Any instrument given to secure the payment of a debt although in the form of an absolute deed of conveyance is nevertheless a mortgage. Is not that law binding upon the United States? Are the United States' instrumentalities or agencies not bound by our statutes relating to conveyances of land, execution and acknowledgment of deeds of conveyances or mortgages, witnesses, signatures, sealing and recordation, foreclosure proceedings and jurisdiction of courts invoked to enforce them? May Congress create an agency which may be exempt from the provisions of a State law enacted in relation to property within the State? If the Federal Government is bound by these statutes where does the power of the legislature and except at such attempts as it might make to interfere with or frustrate the legitimate purposes, or the exercise of the legitimate powers, of such agencies?

Such agencies like the complainant come into the State in competition with local banks and other business en-

terprises. If it makes a contract with a married woman may it ignore the law of this State as to her contractual incapacity? If it takes a mortgage upon a homestead may it ignore all the requirements of the law pertaining to such an instrument? May it ignore the statutes requiring a married woman to acknowledge the execution of the instrument saparately and apart from her husband? If it must observe all these requirements of the law, upon what ground is such an agency exempt from the statute enacted in the interest of an orderly and exact administration of decedent's estate which requires a presentation of the claim to the Administrator within a certain time? In what way does such a law frustrate or impair the accomplishment of the Government's paternal and benevolent purposes?

Perhaps the line is drawn at statutes of limitation and taxes on United States' property and activities of Federal agencies in pursuit of a public purpose, which may be conceded. See Federal Land Bank of New Orleans v. Crosland, 261 U. S. 374, 67 L. Ed. 703, 43 Sup. Ct. Rep. 385.

A statute of non-claim while partaking of the nature of a statute of limitations is not wholly such. It constitutes part of the procedure of court, the orderly, expeditious and exact settlement of the estates of decedents and constitutes part of the procedure which courts must observe in the stttlement of estates of deceased persons and where no exemption from the provisions of the statute exist the court is powerless to create one. If such were not the case the settlement of an estate might be deferred indefinitely and the heirs and legatees, the rightful owners of the property of the estate or beneficiaries of the will of the decedent kept out of the enjoyment of their possessions and deprived of the benefits secured to them by the laws of the State for such un-

reasonable time as to practically deprive them of their property. No such possibility should be brought about by the failure of government officials to comply with the requirements of the statute.

The order overruling the pleas was erroneous and the same is reversed. The order of October 29, 1929, appointing a Special Master is also reversed.

BUFORD, C.J., AND BROWN, J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.