FEDERAL LAND BANK OF COLUMBIA v.
WILLIAM A. BROOKS, et al. ·

190 So. 737
Division B
Opinion Filed July 27, 1939

508

*Hull, Landis & Whitehair* and *Erskine W. Landis,* for Appellant;

*Thomas Palmer, W. N. Burnside,* and *Scofield & Scofield,* for Appellees.

BROWN, J.—William M. Brooks in August, 1918, became indebted to the Federal Land Bank of Columbia in the sum of $5,500.00. That indebtedness was evidenced by the promissory note of Brooks and his wife.

The note by its terms was made payable on an amortization plan in thirty-four annual installments of $337.50 each, the first installment payable July 1, 1920, the subsequent installments being made payable at the same time in each succeeding year until the mortgage debt should be paid. Any installment in which there was a default should bear interest at the rate of 8 per cent. The Lecanto National Farm Loan Association indorsed the note.

Brooks and his wife, in order to secure the payment of the note, executed and delivered to the Federal Land Bank of Columbia a mortgage upon certain lands located in Citrus and Hernando Counties. The mortgage was duly recorded in August, 1918. The mortgage contained a covenant that the mortgagors would pay the debt and interest according to the plan described.

Brooks died June 24, 1923, leaving a will, but appointed no executor. Thus neither the Probate Act of 1933, nor Chapters 10119 of 1925 or Chapter 11994 of 1927, apply here. The testator devised all of his property to his widow and children. William A. Brooks, the son, was appointed administrator of the estate with the will annexed.

Seven installments were paid, five of them after the death of the testator and four of them after the appointment of

the administrator. No other installments have been paid. The installments of July 1, 1927 and July 1, 1928, were not paid, so on November 24, 1928, the Federal Land Bank of Columbia exhibited its bill in the Circuit Court for Citrus County to enforce the mortgage lien, making William A. Brooks, individually and as administrator of the estate of William M. Brooks, Sue G. Brooks, Charlotte E. Brooks Austin, the Lecanto National Farm Loan Association, and several other defendants having or claiming to have some interest in the premises, defendants to the action. Several of the defendants answered averring the ownership by them of claims in the form of statutory liens for services, judgments, and mortgages.

William A. Brooks, individually and as administrator, filed pleas to the bill averring that as administrator he gave notice to all creditors of William M. Brooks, deceased, to present their claims to the administrator within two years, the date of the notice being August 4, 1923; that the notice was published for eight weeks consecutively in a weekly newspaper in Citrus County and proof of the publication was made and filed in the Probate Court for Citrus County; that the complainant did not file its claim with the administrator or the probate court within two years from date of the notice or at any time thereafter; that the administrator has never paid or caused to be paid any sums of money upon the indebtedness since the death of W. M. Brooks; therefore, the defendant averred, the complainant's claim has become a "nonclaim and has become barred, lost, forfeited and extinguished and is no longer a valid and binding debt, demand or claim against the estate."

The defendants Sue G. Brooks, widow, and Charlotte E. Brooks Austin interposed pleas to the same effect.

On the same date the above pleas were filed, February 4,

1929, William A. Brooks, as administrator, filed an answer to the bill admitting most of its material allegations as to the note, mortgage, recordation of the latter, but denied that it is a valid claim against the estate because of the statute of nonclaim, and disclaimed any knowledge of payments upon upon the debt as alleged and averred in the bill. He also alleged that neither the complainant nor any of the defendants who were allowed to have interests in the premises, by reason of liens, judgments, or mortgages, presented their claims within the two years from the date of the notice, or at any time thereafter.

A demurrer was incorporated in the answer. The answer was also adopted by William A. Brooks individually, Sue G. Brooks, widow, and Charlotte E. Brooks Austin. In a like manner the pleas filed by the administrator were adopted by William A. Brooks individually, Sue G. Brooks, and Charlotte E. Brooks Austin.

Lengthy motions to strike portions of the different answers were filed. Demurrers to such portions of the answers of Brooks, as administrator, seeking affirmative relief in the nature of a cancellation of all claims, were also interposed, and the cause finally came on to be heard upon the sufficiency of the pleas and motions and demurrers on October 3, 1929.

The chancellor held the pleas to be insufficient, struck certain portions of the answers setting up the defense of nonclaim, and the defendants W. A. Brooks, individually and as administrator, Sue G. Brooks, and Charlotte E. Brooks Austin took an appeal from that order as well as from an order referring the cause to a special master to take testimony upon the issues remaining as presented by those portions of the answer left in the record.

Upon the previous appeal of this cause to this Court

(Brooks, *et al.,* v. Federal Land Bank of Columbia, 106 Fla. 412, 143 So. Rep. 749, from which the above testimony of the case is taken) we held the pleas of the statute of nonclaim to be good as a matter of law and reversed the order of the court overruling the pleas. We also reversed the order of the court above referred to appointing a special master to take testimony.

While this previous appeal was pending in this Court the complainant filed an amended bill of complaint in the lower court on April 14, 1930.

Our mandate was handed down on October 17, 1932. Subsequent to this mandate, on December 14, 1932, there was filed a "stipulation" whereby it was agreed by all of the parties to the cause that the cause stand in *status quo* without the necessity of further action by any party to the cause for the time benig and until such time as might be fixed by the court upon the application of any of the parties to the case after five days notice had been given the other parties that such application was going to be made to the court.

The Federal Land Bank of Columbia made a motion to file a second amended bill of complaint on January 14, 1937. This bill was allowed to be filed subject to the objections of the defendants. Thereafter on February 15, 1937, the defendants filed objections to the filing of this second amended bill of complaint. On March 17, 1937, the court entered an order stating that it was without jurisdiction to permit the filing of the second amended bill of complaint sustained the defendants' objections and dismissing the cause of action. Thereupon the complainant Federal Land Bank of Columbia entered an appeal from that order of the Court.

Upon the previous appeal of this case (Brooks, *et al.,* v.

Federal Land Bank of Columbia, 106 Fla. 412, 143 Sou. Rep. 749), this Court did not make a final disposition of the cause. The mandate of this Court of October 17, 1932, did nothing more than sustain the legal sufficiency of certain pleas of the defendants, and reversed the order of the chancellor overruling the pleas, as well as the order appointing a special master, as above set forth. The cause of action was then, in legal effect, remanded to the circuit court "for further decree in accordance with and not inconsistent with the ruling of this Court, with leave to take such further proceedings, in the cause as right and justice may require in arriving at another decree which will accord with the ruling and mandate of the appellate court;" the general rule being that an appeal in a chancery case is "a step in the cause." Simpson v. Warren, 106 Fla. 688, 143 So. 602; Rabinowitz v. Houk, 100 Fla. 44, 129 So. 501; 3 C. J. 320. In this general connection see 4 C. J. 1220, *et seq.*

The Court in sustaining the legal sufficiency of a plea does not direct or award an issue (Crump v. Perkins, 18 Fla. 353) nor does it pass upon the facts of the case. The facts alleged in the plea, unless admitted, are to be determined after the testimony has been taken. The ruling of the Court upon the legal sufficiency of a plea does not bar the taking of testimony as to matters of fact alleged in the plea, where its legal sufficiency is upheld.

"Ordinarily where a plea in equity is set down for argument, its truth is admitted only for the purpose of testing its legal sufficiency. The judgment to be entered upon the allowance of such a plea upon argument is not definitive, for its truth may be denied by the plaintiff by replication, and the parties may then proceed to examine witnesses, the one to prove, the other to disprove the facts stated in the

plea; and no order of the Court in merely passing upon the legal sufficiency of the plea should preclude the plaintiff the right thus to controvert the truth of the facts alleged." Wilson v. Mitchell, 43 Fla. 107, 30 S. 703.

The amended bill of complaint filed by formal permission of the court on April 14, 1930, alleged that the administrator had waived formal presentation of the mortgage claim by paying through another person interest within the time required by the statute for presentation (see Tucker v. First National Bank, 98 Fla. 914, 124 So. 464), and thus had the effect of putting in issue the allegations of the pleas and the answers of the defendants when this Court upheld the legal sufficiency of the pleas and those portions of the answers stricken by the lower court, by its mandate of October 17, 1932. Hill v. First National Bank, 73 Fla. 1092, 75 So. 614. The cause being at issue, the court, of its own motion or on application of either party, could have entered an order fixing a time for the taking of testimony. See Section 46, Chancery Act of 1931, which was then in effect.

The time for taking testimony is set out in the Chancery Act of 1931, but after the mandate was sent down in October of 1932 and prior to the expiration of the time for taking testimony, allowed by the statute, the parties to this suit by written stipulation, entered into in December of 1932, extended this time. This they had authority to do under the terms of said Chancery Act. Said section 46 provided that:

"The time for taking testimony may be extended by special order of the court in its discretion or by written stipulation of the parties filed in the cause, or by oral stipulation evidenced by the record."

After this stipulation was entered into, no further action

was taken in court by either party until January 14, 1937, a period of about four years and one month, when appellant asked leave of the court to file its second amended bill of complaint, and the court permitted its filing subject to the objections of the defendant, which were afterwards filed and sustained by the court, as above stated, the court stating in its order that, "The court is of the opinion that it is without jurisdiction to permit the filing of the second amended bill of complaint."

The lower court has no authority to permit amendments inconsistent with the holding of the appellate court as applied to the state of the record upon which an interlocutory appeal has been taken and decided. Palm Beach Estates v. Crocker, 106 Fla. 617, 143 So. 792. Nor may an amended bill state a new and different cause of action. Palm Beach Estates v. Crocker, *supra;* Gugenheimer & Co. v. Davidson, 62 Fla. 490, 56 So. 801; State v. Hewitt, 116 Fla. 140, 156 So. 236. However, the lower court does have the authority and should in its sound discretion permit either party to amend their pleadings after the case has been remanded by the Supreme Court so long as such amendments do not set up a new cause of action, and are not inconsistent with the disposition of the cause in the Supreme Court and the holding set forth in its opinion. Hart v. Smith, 20 Fla. 58. See in this connection Phifer v. Abbott, 73 Fla. 402, 70 So. 488; Peacock v. Our Home Life Ins. Co., 73 Fla. 1207, 75 So. 799.

The second amended bill of complaint herein presents the same general theory of the complainants' case for mortgage foreclosure as was presented in the original bill of complaint, and embraced the allegations of the amended bill of 1930, with regard to waiver of presentation by payment of interest, and also prayed more specifically for the right to fore-

close appellant's lien for taxes paid out in protection of its mortgage lien. This was a permissible amendment of the original bill. See Hughes v. Shaner, 128 Fla. 183, 174 So. 400. The only essèntial difference in the original bill of complaint as amended in 1930 and the second amended bill of complaint is that the former prayed that: "an accounting be taken by or under the direction of this court of the amount remaining due and unpaid to your orator upon said note, including interest thereon, and the amount of reasonable compensation or fees to be allowed and paid to your orator for services of its solicitors in and about this suit and in and about the foreclosure of said mortgage, and of all other amounts and obligations due or owing to your orator and secured by said mortgage, including the cost of said abstracts of title, *and of said amount paid out for taxes, together with interest thereon.*" (Emphasis added.)—while the latter prayed that: "an accounting be taken by or under the direction of this court of the respective amounts due and owing to plaintiff and *secured by the various liens* hereinabove referred to, *both mortgage and tax liens, separately and severally,* including principal, interest, attorney's fees and all costs and expenses of this suit and all other amounts and interest due or owing to plaintiff and secured either by mortgage or tax lien upon the various parcels of real estate, hereinbefore described." (Emphasis added.)

The objection raised by the defendants that the complainant has been guilty of laches has given us some concern, but after due consideration we have concluded that it was without merit. The parties to this action extended the time for the disposition of this case by a written stipulation which was joined in by all parties to this action through their counsel. The courts look with favor on stipulations and try to give effect to them according to the intention of the

parties. Esch v. Forster, 123 Fla. 905, 168 So. 229; Smith v. Smith, 90 Fla. 824, 107 So. 257; 60 C. J. 40. They are not to be construed technically, but rather in accordance with their spirit and in furtherance of justice. Mutual Life Insurance Company v. Harris, 97 U. S. 331, 24 L. Ed. 959.

This stipulation was binding on the defendants. They could have secured a release at any time upon the proper procedure as set out in the stipulation itself, i. e., by application to the court upon five days notice to the other parties, but they did not do so. This Court has previously stated that in order for laches to run against a party there must be shown more than just a lapse of time. Sample v. Natably, 120 Fla. 161, 162 So. 493.

There was no such stipulation in the case of Hancock v. Hancock, 128 Fla. 684, 175 So. 734; therefore, the holding in that case, construing the effect of Section 4218 C. G. L. Supp. (1) and equity Rule 1, is not applicable here.

There remains to be considered the main question in this case. May a mortgagee, whose mortgage has been outlawed by the statute of nonclaim, be subrogated to the lien of the State for all taxes paid by him to protect the mortgaged property from sale for failure to pay taxes thereon?

This question has recently been answered by this Court indirectly in allowing a junior mortgagee, who paid the taxes on the mortgaged property, to be subrogated to the paramount lien of the State for the amount of the taxes so paid; and his lien therefor was decided to be prior to the lien of the senior* mortgagee. Prudential Life Insurance Co. of America v. Baylarian, et al., 124 Fla. 259, 168 So. 7.

It would be inequitable and a manifest injustice to allow the defendant to secure a release of the property in question

from taxes paid by the complainant in good faith for the protection of his mortgage lien. A mortgagee who has paid the taxes on property in protection of his ·mortgage lien will be protected in such payment and will be subrogated to the paramount lien of the State for all such taxes so paid. Prudential Life Insurance Co. of America v. Baylarain, *supra*; Childs v. Smith, 58 Wash. 148, 107 Pac. 1053; Fiacre v. Chapman, 32 N. J. Equity, 463.

The mortgage provides that if the mortgagors shall fail to pay the taxes, then the mortgagee may pay said taxes and the money so advanced shall be added to the mortgage indebtedness and become a part of the mortgage indebtedness. The defendants contend that for this reason the taxes paid are merely a part of the mortgage debt and therefore subject to the statute of nonclaim the same as the original indebtedness. This contention is untenable. The mortgage was primarily given to secure the payment with interest of a definite sum of money loaned. The complainant paid these taxes in good faith to protect his mortgage lien; he is not a mere volunteer. The complainant, by reason of the mortgagor's failure and that of his administrator to pay the taxes on the mortgaged property, had to protect this property from sale by the state to some innocent purchaser for delinquency in tax payments. The mortgage was valid when executed, and the bill alleges that the payments were made in good faith. Can it be said that this complainant should have to run the risk of losing whatever rights he had in the property by tax sales while this litigation was pending and the question of the application of the statute of nonclaim to a corporation formed under the authority of the United States was being litigated in the courts of this State? We think not.

This provision in the mortgage was inserted for the pro-

tection of the mortgagee. It is not mandatory on the mortgagee that he pay such delinquent taxes, or that he treat such payments merely as a part of the mortgage debt or lien, but he had the right to pay these taxes under the terms of the mortgage, if the mortgagor failed to discharge his duty in that regard. Therefore the mortgagee may be subrogated to the paramount lien of the State for such tax payments. Catlin v. Mills, 140 Wash. 1, 47 A. L. R. 545, 247 Pac. 1013; Wyoming Building & Loan Association v. Mills Construction Company, 38 Wyo. 515, 60X A. L. R. 418.

It is true that the original bill sought the enforcement of the mortgage for the original debt and the taxes paid by the mortgagee, but the amount paid out by the mortgagee for taxes, while secured by the mortgage, was not a part of the original mortgage debt to which the plea of the statute of nonclaim was held by this Court to be a good plea. This matter of tax payments was not mentioned in our former opinion. The amount thus expended for payment of taxes by the mortgagee was an expenditure which the mortgagee was forced to make by reason of the neglect of the mortgagor to carry out his covenant to pay all taxes as they became due. Under these circumstances the mortgagee is entitled to be subrogated to the paramount lien of the State, as to which the statute of nonclaim does not apply. The statute then in effect made it the duty of the administrator to pay taxes. But aside from this, we think the principle of subrogation of the mortgagor to the State's lien would apply under the circumstances, as above outlined.

The order of the court sustaining defendant's objections to the filing of the second amended bill and dismissing this cause of action is reversed and the cause is remanded for

further proceedings not inconsistent with the views herein expressed.

Reversed.

WHITFIED, P. J., and CHAPMAN, J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.