975 So.2d 1205 (2008)
Victor Manuel ROSARIO-PAREDES, Appellant,
v.
J.C. WRECKER SERVICE and Bill Farmer, Sheriff of Sumter County, Florida, in his official capacity, Appellees.
No. 5D06-4317.
District Court of Appeal of Florida, Fifth District.
March 7, 2008.
*1206 Thomas John Dandar of Dandar & Dandar, P.A., Tampa, for Appellant.
Ceci Culpepper Berman and Sarah Lahlou-Amine of Fowler, White, Boggs, Banker, P.A., Tampa, for Appellee J.C. Wrecker Service.
Linda L. Winchenbach of John M. Green, Jr., P.A., Ocala, for Appellee Bill Farmer.
COHEN, J.
Victor Rosario appeals an adverse final judgment and denial of a motion for new trial following a jury verdict of no liability on the part of J.C. Wrecker Service or Bill Farmer, Sheriff of Sumter County, in Rosario's motor vehicle negligence lawsuit. We affirm.
In the early morning hours of August 1, 2001, a tractor-trailer ran off CR 475 into woods. J.C. Wrecker Service was called to extricate the disabled rig; its initial attempts, however, proved unsuccessful. J.C. Wrecker determined the extraction procedure required placing a steel cable across the road. They contacted the Sumter County Sheriff's Department to arrange for traffic control during the towing *1207 operation, and Deputy Tucker responded to the scene.
J.C. Wrecker decided to await first light to begin the towing operation. A cable was laid flat across the road and connected to the disabled tractor-trailer. Deputy Tucker parked his patrol vehicle, activated his emergency lights, and began to direct traffic. No flares were deployed. During the initial setup, traffic was allowed to pass over the cable, but once the towing company prepared to initiate the process of hauling out the tractor-trailer, Deputy Tucker began to stop traffic. One vehicle was stopped when Mr. Rosario, driving another tractor-trailer, came over the crest of a hill about 1000 feet from the initial accident scene. Mr. Rosario blew his horn and changed lanes to pass around the stopped vehicle, despite the presence of the patrol vehicle and tow truck. Although Mr. Rosario slowed as he approached the scene, Deputy Tucker ran off the roadway because he believed Mr. Rosario did not intend to stop. The cables were still flat across the road, but were attached to the tow truck's high fixed booms and were higher at the rear. Mr. Rosario's tractor-trailer caught the cable stretched from two steel booms on the rear of the wrecker. Once the cable played out, it cut through the top of Mr. Rosario's cab, grazing his head. His speed at the time of impact was less than ten miles per hour.
The trial testimony conflicted on numerous issues ranging from the time of the incident, lighting conditions, placement of the patrol vehicle, and the operational condition of the emergency lights for both the deputy's patrol vehicle and tow truck.
Mr. Rosario raises a number of issues on appeal; only two merit discussion. He argues that the verdict was against the manifest weight of the evidence and that improper closing argument deprived him of a fair trial.

Denial of Motion for New Trial
The issue for the appellate court to resolve is not whether the verdict was contrary to the manifest weight of the evidence, but rather, whether the trial court abused its discretion in denying a motion for new trial. Dewitt v. Maruhachi Ceramics of Am., Inc., 770 So.2d 709, 711 (Fla. 5th DCA 2000). In order to reach that conclusion, the evidence must be clear and obvious, and not conflicting. Id. We conclude that the trial judge did not abuse his discretion in denying the motion for new trial. When the evidence is in conflict, as it was in this case, it is the function of the jury to weigh the evidence and resolve those conflicts. It is neither the trial judge's nor the appellate court's role to disturb that determination. Reversal of a jury verdict is appropriate only in the absence of conflicting evidence, when there is no rational basis in the evidence to support the verdict. Izquierdo v. Gyroscope, Inc., 946 So.2d 115, 118 (Fla. 4th DCA 2007) (citing Sifford v. Trans Air, Inc., 492 So.2d 407, 408 (Fla. 4th DCA 1986)).

Closing Argument
Mr. Rosario objected to statements of personal opinions by the Sheriff's counsel as well as to the following argument made by J.C. Wrecker's counsel to discredit his treating physicians:
[T]hey do an amazing job, they do an amazing job of trying to convince people of these injuries, but that's why they keep on hiring these doctors over and over; that's why Dr. Hoffman has testified 15 times for this Plaintiff's firm, they're good. They're good at what they do and they're paid very handsomely for it. That's why these guys are so good. I mean, there's a network of lawyers and doctors and all working together, everybody is making money. That's *1208 what these guys do for a living, they testify, they're professional witnesses. They do this for a living. And how dare they make us look like the bad guy for hiring our own doctors.
Mr. Rosario's counsel objected and moved for a mistrial, which the court denied. We conclude that counsel's argument and expressions of personal opinion were improper. The question, however, is whether the improper arguments were so highly prejudicial that it denied Mr. Rosario the right to a fair trial. Engle v. Liggett Group, Inc., 945 So.2d 1246, 1271 (Fla.2006). We decide that they did not.
While attorneys are given broad latitude in closing arguments, their comments must be confined to the evidence and to issues and inferences that can be drawn from the evidence. Venning v. Roe, 616 So.2d 604, 604 (Fla. 2d DCA 1993). Closing argument may focus on an expert's response to permissible areas of inquiry, including the scope of employment in the pending case and compensation, the percentage of income derived from litigation-related matters, and the percentage of work performed for plaintiffs and defendants. See Flores v. Miami-Dade County, 787 So.2d 955, 957-58 (Fla. 3d DCA 2001). In this case, Dr. Hoffman testified without objection to the number of times he had been employed by the plaintiff's law firm. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness's financial incentive to continue the financially advantageous relationship. Allstate Ins. Co. v. Boecher, 733 So.2d 993, 997-98 (Fla.1999); Sanchez v. Nerys, 954 So.2d 630 (Fla. 3d DCA 2007), review denied, 969 So.2d 1014 (Fla.2007). Arguments that go beyond bias, and instead attack opposing counsel or suggest fraud or collusion are not acceptable and will not be condoned. Wall v. Costco Wholesale Corp., 857 So.2d 975, 976 (Fla. 3d DCA 2003); Johnnides v. Amoco Oil Co., 778 So.2d 443, 444-45 (Fla. 3d DCA 2001). In response to Mr. Rosario's objection, the trial court offered to fashion a curative instruction, which plaintiff's counsel declined. The closing arguments complained of in this case were isolated and, while improper, did not rise to the level that deprived Mr. Rosario of a fair trial.
Accordingly, we AFFIRM the final judgment.
GRIFFIN and SAWAYA, JJ., concur.