MAKAR, J.,
dissenting.
Tried, convicted and sentenced in 1994 as an adult, Dortch claimed at his Graham [2] resentencing hearing that a stipulation entered prior to his original trial — one he had never previously sought to enforce — remains binding and should now operate to limit his decades-old sentence. While his life without parole sentences in 1994 must be adjusted in light of Graham, the revivification of the abandoned stipulation is unjustified and the recasting of its purpose is contrary to principles of finality.
Dortch and the State stipulated prior to his first trial in January 1994 that the State need not produce a forensic witness who was suffering from an injury. After the mistrial, the prosecutor announced via a letter his view that the stipulation was no longer applicable because the forensic expert would be available for the second trial scheduled for March 1994.
I have been advised this date that both Julie Cooper and Charlotte Word will be available for trial during the week of March 7, 1994. You were out of your office so I told Judge Tarbuck of their availability. Judge Tarbuck tentatively set the Dortch trial for Tuesday, March 8, beginning at 9:30 a.m. Jury selection will be on a regular jury selection date prior to the trial date. Please let Judge Tarbuck know immediately if this is not acceptable to you.
As you know, the State, the defendant and defense counsel entered into a stipulation which was agreed to by the Court. The case then proceeded to trial which resulted in a hung jury and’ a mistrial. Since Julie Cooper is now available, the stipulation relating to the diagnostic testing by Cellmark Diagnostics previously entered into is hereby nullified. Specifically the State will be required to prove chain of custody, the amplification of the DNA and DNA typing. Likewise, the State no longer agrees nor will the Court be bound by any limitation on the sentence imposed if the defendant is convicted. Specifically, the Court may impose any legal sentence either concurrent or consecutive to any other sentence previously imposed.
Dortch did not object to the State’s position. The trial proceeded, the State met its evidentiary obligations at trial via its live expert, and the jury rendered guilty verdicts as to all charges. At sentencing, Dortch again lodged no objection to the State’s position; nor did he affirmatively assert the stipulation applied to his sentence. Likewise, Dortch never raised the stipulation as an issue in a direct appeal; nor did he do so in any collateral review of his conviction or sentence. Ordinarily, this wholesale failure to assert an entitlement to a claimed right affecting sentencing amounts to waiver, or abandonment. Kilpatrick v. State, 422 So.2d 934, 935 (Fla. 1st DCA 1982) (The fact that the basis of the defendant’s collateral attack is alleged to be one of constitutional dimension does not preclude a waiver by the failure to assert it on direct appeal.”) (quoting Roth *1179 v. State, 385 So.2d 114, 115 (Fla. 3d DCA 1980)).
Seventeen years passed. In 2011, the State filed a motion seeking resentencing of Dortch in light of the Graham decision because Dortch had yet to do so.[3] But for the happenstance of Graham resentencing, the 1994 stipulation was a closed chapter whose vitality seemingly had expired long ago. During the resentencing hearing, however, the defense verbally raised the issue of the stipulation for the first time without notice to the State or the trial court, which continued the issue to a second hearing. After carefully reviewing the issue (including a memorandum provided at the second hearing), the trial court concluded that it was not bound by the stipulation, and imposed forty years’ imprisonment on each of the “life without parole counts,” ordered two of those sentences to run consecutively, and ordered those sentences to run consecutively to the twenty-two year sentence imposed in another case.
On the merits, the trial court was correct in disallowing Dortch to resuscitate his abandoned claim of right under the stipulation, which was not asserted for nearly two decades; even a stipulation can be foregone. See generally Fed. Land Bank of Columbia v. Brooks, 139 Fla. 506, 516,190 So. 737 (1939) (stipulations are not to be construed technically, but rather in accordance with their spirit and in the furtherance of justice). No case holds that a resentencing court must ignore a nearly two-decade failure to assert what is essentially a stale and abandoned issue as to a stipulation’s applicability, wording, and intent. It was Dortch’s obligation to raise the issue long ago; his total inaction amounts to waiver and abandonment.
Even if the stipulation could be resuscitated, its language indicates that it would apply to “any sentence imposed in this case,” a phrase that should be understood in light of circumstances existing at the time of the original trial, which show that its only purpose was to avoid delay due to the unavailability of the witness for the January trial date. To enforce the stipulation, the court had to construe it. Naghtin v. Jones By and Through Jones, 680 So.2d 573, 576 (Fla. 1st DCA 1996). And in so doing, it was required to interpret the stipulation in view of the result the parties were trying to accomplish. Fed. Land Bank of Columbia, 139 Fla. at 516, 190 So. 737. While stipulations differ from contracts in some ways, construing them is ultimately a judicial function akin to contractual interpretation. That is what the trial court did here, concluding that even if the stipulation had not been abandoned or waived, it was inapplicable to other than the original trial.
Indeed, Dortch relied almost exclusively on contract principles below, characterizing the parties’ agreement as a “stipulation contract” and arguing contract theory in support of his interpretation. The heading in his brief stated “THIS COURT’S SENTENCE UNLAWFULLY BREACHED A BINDING PRE-TRIAL STIPULATION CONTRACT.” He argued the “plain language of the [stipulation] contract” supported his view; that his contractual right should not be forfeited even though he failed to exercise it; he concluded by saying the resentencing court’s “sentence unlawfully breached a binding, pretrial stipulation contract from which the State never properly withdrew.”
*1180 A prescient prosecutor (which all must now be in light of this court’s decision) might have drafted the stipulation to take into account the potential for a mistrial and made it applicable only for the first one; but it is unfair to impose that obligation on the State twenty years later when Dortch himself remained silent and never objected or sought to enforce the claimed right. It also second-guesses the trial court’s interpretation of the stipulation’s language by imputing motives and intents to the participants, none of whom are readily available to explain the context and intent of the stipulation decades later. The record — rather than supporting a perpetual, non-waivable right flowing from the stipulation — supports the contrary conclusion: that Dortch and his prior counsel understood the stipulation applied only to expedite the first trial and that it was never contemplated it would be used in a later trial when the injured witness would become available. If they had a different view, the time to assert it has long since passed. The trial court’s holding in this regard is wholly supportable. Reviving the stipulation a generation after its conception has a prestidigitational quality that rewards inaction and undermines principles of finality; even if timely raised, the record does not support construing the stipulation so broadly. I would affirm on this issue.
I.
One benefit of reviving the stipulation is avoidance of the question of whether the 102-year cumulative sentence imposed for the two criminal episodes by the resen-tencing court violates Graham. On its face, this seemingly extra-life-size sentence flirts with the limits of this district’s current Graham jurisprudence, but it cannot be said to violate it. The total sentence arises from two separate criminal episodes, one netting Dortch twenty-two years and the other resulting in four forty-year sentences (two to be served consecutively); each of the individual sentences falls short of the life without parole sentence at issue in Graham. Under the cumulative sentence at issue, Dortch’s potential for gain-time — as noted by the trial, court — makes him eligible for release at age seventy-nine, which is within the outer parameters of our post-Graham cases. See Smith v. State, 93 So.3d 371 (Fla. 1st DCA 2012) (eighty-year consecutive sentence upheld because Smith would be scheduled for release at age eighty-one with gain-time); cf. Floyd v. State, 87 So.3d 45 (Fla. 1st DCA 2012) (aggregate eighty-year sentence violates Graham where offender would be scheduled for release at eighty-five with gain-time). Affirmance on the Graham issue would seem to apply here.
That said, it is an understatement to note the fluidity of how the judiciary views Graham. Resentencing of juvenile offenders post-Graham has followed many incongruous paths. One simply says Graham does not apply to a term-of-years sentence, no matter how lengthy; another estimates the juvenile offender’s expected life span and upholds a term-of-years sentence that — with credits for good-time and other actuarial and demographic adjustments— should afford release before the then-to-be-geriatric prisoner’s statistically-determined death date (both approaches emphasizing the goals of deterrence, retribution and protecting society from recidivism).[4] *1181 Yet another reads Graham as constitutionally requiring that states institute or restore parole[5] and provide rehabilitative treatment services to repristinate juvenile offenders — -while they are still young, but imprisoned — to hasten their earlier release from prison; a related, but less ambitious, path is to provide for parole, but only after a minimum number of years of incarceration (both approaches emphasizing the goal of rehabilitation).[6] These reactions to Graham — along with others[7] — are understandable given the lack of guidance on what the Court meant when it said juvenile offenders must be given some “meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation,” 560 U.S. at 75, 130 S.Ct. 2011 but concurrently said that the Eighth Amendment “does not require the State to release that offender during his natural life,” id., only that a juvenile sentenced to life must have “some realistic opportunity to obtain release before the end of that term.” Id. at 82, 130 S.Ct. 2011. How is the judiciary to reconcile the Court’s Rashomonic language, when four different readers can see four (or more) different interpretive paths? Our Court has chosen a path, one that would necessitate affirmance on the Graham issue in this case; but, I am doubtful this path will be without significant detours and roundabouts in the years to come.

. Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010).

. The State said “Since the defendant had not filed a motion, we went ahead and did that just to bring it in front of the Court.”

. See generally Krisztina Schlessel, Graham's Applicability to Term-of-Years Sentences and Mandate to Provide A “Meaningful Opportunity" for Release, 40 Fla. St. U. L. Rev. 1027, 1028 (2013) (providing overview of cases interpreting Graham's application to term-of-years sentences), and Therese A. Savona, The Growing Pains of Graham v. Florida: Deciphering Whether Lengthy Tenn-of-Years Sentences for Juvenile Defendants Can Equate to *1181 the Unconstitutional Sentence of Life Without the Possibility of Parole, 25 St. Thomas L. Rev. 182, 199 (2013) (surveying Florida and California appellate decisions post-Graham that can be "conflicting and curious”).

. See, e.g., Smith v. State, 93 So.3d 371, 378 (Fla. 1st DCA 2012) (Padovano, J., concurring) (suggesting that section 947.16(6), Florida Statutes, should be deemed unconstitutional “to the extent that it removes parole eligibility for juvenile offenders who have been sentenced as adults.”); Gridine v. State, 89 So.3d 909, 911 (Fla. 1st DCA 2011) (Wolf, J., dissenting) (noting the "only logical way to address the concerns” in Graham ... is to provide parole opportunities for juveniles. The Legislature, not the judiciary, is empowered to create a provision for parole.”) (citation omitted), review granted, 103 So.3d 139 (Fla.2012).

. See generally Sally Terry Green, Realistic Opportunity for Release Equals Rehabilitation: How the States Must Provide Meaningful Opportunity for Release, 16 Berkeley J. Crim. L. 1, 32 (2011) (stating that “Graham requires that a release process operate during the incarceration of the juvenile life sentence offender” such that "reinstitution of a parole-like system that focuses on rehabilitative reform purposes is paramount to the States’ compliance with Graham."); Marsha L. Levick & Robert G. Schwartz, Practical Implications of Miller and Jackson: Obtaining Relief in Court and Before the Parole Board, 31 Law & Ineq. 369, 393 (2013) (discussing parole systems for juveniles and the lack of available prison programming for juvenile offenders who enter “prison at a tumultuous developmental time in their lives.”).

.See, e.g., Barry C. Feld, Adolescent Criminal Responsibility, Proportionality, and Sentencing Policy: Roper, Graham, Miller/Jackson, and the Youth Discount, 31 Law & Ineq. 263, 264 & 322-32 (2013) (proposing a categorical "Youth Discount” that provides a "proportional reduction of adult sentence lengths” via a "sliding scale of diminished responsibility” that "gives the largest sentence reductions to the youngest, least mature offenders.”).