DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HILTON M. WIENER,**
Appellant,

v.

**THE COUNTRY CLUB AT WOODFIELD, INC.,**
a Florida corporation,
Appellee.

No. 4D17-2120

[September 5, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Edward A. Garrison, Judge; L.T. Case No. 50-2014-CA-008896-XXXX-MB.

Daniel A. Hershman of Hershman Law, P.A., West Palm Beach, for appellant.

James N. Krivok of Dicker, Krivok & Stoloff, P.A., West Palm Beach, for appellee.

CONNER, J.

Hilton M. Wiener ("Wiener") appeals the final judgment against him in favor of The Country Club at Woodfield, Inc. ("Woodfield Club"). The issue we decide is whether the trial court erred in interpreting the pretrial stipulation in a manner that narrowed the factual issues to be tried pertaining to liability, resulting in the deprivation of a fair trial. From the record on appeal, we conclude that the trial court failed to consider the intent of the parties as evidenced by the statements within the pretrial stipulation and incorrectly interpreted the stipulation in a manner that limited the evidence at trial, denying Wiener a fair trial. For those reasons, we reverse.

*Background*

Woodfield Club is a corporation which operates a country club in a residential community. Wiener was a homeowner in the residential community, which obligated him and his wife to purchase a club

membership, pursuant to the master declaration of covenants for the residential community.

From approximately February 2004 through May 2011, Wiener used facilities as a club member and paid all dues in accordance with invoices issued by Woodfield Club. However, starting in June 2011, Weiner stopped paying dues because he moved out of the home in response to his wife filing for divorce.

Article X, Section 18(b) of the master declaration of covenants provides for the transfer of membership obligations in the event joint homeowners divorce:

> b. In the event Members are legally separated or divorced, title to the Membership, including all rights and benefits given to the holder thereof, shall vest in the spouse awarded the Membership by judicial determination or settlement, provided such spouse fulfills the eligibility requirements for Membership in the Club. Both of the divorced or legally separated Members shall be required to give written notice to the Club designating the person who is entitled to the rights and privileges of the Membership within five (5) days after the divorce or legal separation is declared final. Until written notice has been provided to the Club, both spouses shall remain responsible for the payment of all dues, fees, charges and assessments associated with the Membership. Upon termination of co-habitation, only one Member may use the Membership. If both parties fail to designate one person, the Membership privileges shall be determined as follows:
>
> > (1) The person resident in the Property shall be deemed to be the Member entitled to use the Club Facilities.

Wiener's wife was granted exclusive use of the home in January 2013, while their divorce was pending. The divorce became final in December 2013, at which time Wiener's interest in the home was awarded to the ex-wife. In July 2014, Wiener executed a quit claim deed transferring his interest in the home to his ex-wife. The ex-wife sold the house to a third party in June 2015, and the club membership for the property was transferred to the third-party purchaser.

Woodfield Club sued Wiener in July 2014 for breach of contract. Wiener filed an answer alleging that the court order awarding his ex-wife exclusive use and possession of the home and subsequent divorce decree denied him access to Woodfield Club and its facilities, therefore absolving

2

him from any obligations. Upon the case being scheduled for trial, the parties filed a joint pretrial stipulation.

Section I of the pretrial stipulation was entitled: "Stipulated Facts Which Require No Proof at Trial." Paragraph P of Section II stated:

> Defendant's obligation to pay dues, assessments and other charges due Plaintiff terminated on June 23, 2015.

June 23, 2015 is the date ownership of the house was transferred to the third-party purchaser, triggering membership requirements for the new owner.

Section III of the pretrial stipulation was entitled: "Issues of Law and Fact to be Determined at Trial." Paragraphs F, G, H, and I of Section III stated:

> F. Whether Defendant's financial obligation to the Club pursuant to the Membership Agreement was terminated or extinguished by a final judgment of dissolution of Defendant's marriage to his former wife.
>
> G. Whether the Court Order in Defendant's dissolution of marriage proceeding, which awarded Defendant's ex-spouse exclusive use and possession of the Harrington Way property, extinguished or altered Defendant's right to used Plaintiff's facilities under the Membership Agreement.
>
> H. Whether the Court Order in Defendant's dissolution of marriage proceeding, which awarded Defendant's ex-spouse exclusive use and possession of the Harrington Way property, extinguished or altered Defendant's obligation to Plaintiff under the Membership Agreement.
>
> I. Whether Defendant was obligated to pay dues, assessments and all other club charges accruing on Defendant's membership until Defendant's full golf membership was reissued by the Club to a new member pursuant to Plaintiff's Bylaws.

The non-jury trial was conducted by a judge who had not handled the case prior to trial. After the parties made their opening statements and while Woodfield Club was presenting its first witness, the trial judge interrupted examination of the witness to question why the case was

proceeding to trial, based on stipulated facts the trial judge read in the pretrial stipulation. The trial judge interpreted the statement in Subsection P of the pretrial stipulation to mean that the parties had agreed that "the defendant's [Wiener's] obligation to pay dues, assessments, and other charges to the plaintiff [Woodfield Club] terminated on June 23, 2015" (the date the membership was transferred to the third-party purchaser), prompting the trial judge to ask, "What are we doing here?"

Wiener argued that the stipulation meant that the June 23, 2015 date was the outside date for liability, and that Subsection P had to be read in context with the other issues framed in the stipulation. The trial judge flatly rejected the argument, contending, "That's not what you stipulated to." Additionally, the trial judge asserted it was his understanding that in the Fourth District, "the pretrial stip controls over the pleadings and anything else." After concluding that Wiener's liability for charges owed for the membership was "a mathematical calculation," the trial judge ended discussion on the timeframe of Wiener's liability for dues and instructed Woodfield Club to provide a proposed judgment. The remainder of the trial was spent calculating the amount due. The trial court entered final judgment in favor of Woodfield Club. After his motions for rehearing and new trial were denied, Wiener gave notice of appeal.

*Appellate Analysis*

Wiener frames two primary issues on appeal, but we determine those can be consolidated into one issue: Whether the trial court correctly construed the pretrial stipulation when awarding a judgment in favor of Woodfield Club. Additionally, Wiener argues the trial court improperly denied his motions for rehearing and a new trial.

We conduct a *de novo* review of a trial court's interpretation of a written contract as a question of law "provided that the language is clear and unambiguous and free of conflicting inferences." *Ciklin Lubitz Martens & O'Connell v. Casey*, 199 So. 3d 309, 310 (Fla. 4th DCA 2016) (quoting *Commercial Capital Res., LLC v. Giovannetti*, 955 So. 2d 1151, 1153 (Fla. 3d DCA 2007)). Pretrial stipulations are interpreted using the same principles for interpreting written contracts. *See McGoey v. State*, 736 So. 2d 31, 34 (Fla. 3d DCA 1999) (citing contract law and explaining that the essence of a pretrial stipulation is "an agreement between the parties" requiring mutual assent).

Orders denying rehearing are reviewed for abuse of discretion. *Allard v. Al-Nayem Int'l, Inc.*, 59 So. 3d 198, 201 (Fla. 2d DCA 2011). Appellate courts also "review orders on motions for new trial for an abuse of

discretion." *Cent. Square Tarragon LLC v. Great Divide Ins. Co.*, 82 So. 3d 911, 913 (Fla. 4th DCA 2011).

> If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. The discretionary ruling of the trial judge should be disturbed only when his decision fails to satisfy this test of reasonableness.

*Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980).

"Although [an appellate] court typically reviews the denial of motions for new trial under an abuse of discretion standard, the standard becomes de novo if, as a matter of law, the trial judge applies the incorrect legal standard in denying the motion." *Collett v. State*, 28 So. 3d 224, 226 (Fla. 2d DCA 2010). Because the motions for rehearing and a new trial in this case are grounded in the argument that the trial court improperly interpreted the pretrial stipulation, the appropriate standard of review for the denial of those motions is *de novo*.

"When construing stipulations, a court should attempt to interpret it in line with the apparent intent of the parties." *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., LLC*, 196 So. 3d 557, 561 (Fla. 4th DCA 2016). As explained in *Travelers Insurance Co. v. VES Service Co.*, 576 So. 2d 1349 (Fla. 1st DCA 1991):

> A stipulation . . . must be carefully examined to determine whether the language used actually discloses a clear, positive, and definite stipulated fact. The statement should not be vague or ambiguous. Nevertheless, it should receive a construction in harmony with the apparent intention of the parties. *It is not to be construed technically, but rather in accordance with its spirit, in furtherance of justice, in the light of the circumstances surrounding the parties, and in view of the result that they were attempting to accomplish.* 2 Fla. Jur. 2d, *Agreed Case and Stipulations*, § 6; *see Federal Land Bank of Columbia v. Brooks*, 139 Fla. 506, 190 So. 737 (Fla. 1939).

*Id.* at 1350 (alteration in original)(emphasis added).

Wiener argues that the trial court refused to consider what the parties intended as to the issues to be tried, as expressed by the pretrial stipulation, and ignored the disputed facts that were detailed in the pretrial stipulation. He further argues that the parties understood a genuine dispute existed as to *when* his obligation to pay membership

charges ended, and the intent of the language interpreted by the trial was to establish the outside date of the period in dispute.

Woodfield Club argues that the facts in the stipulation are binding on the parties, and that Wiener failed to seek relief prior to or at the commencement of trial from the improper selection of words in the stipulation. *See Eagle FL VI SPE, LLC v. T & A Family P'ship, Ltd.*, 177 So. 3d 1277, 1280 (Fla. 2d DCA 2015). Thus, Woodfield Club argues that the trial court did not abuse its discretion.

However, our review of the record indicates that the trial court did not interpret the stipulation "in line with the apparent intent of the parties." *See Utopia*, 196 So. 3d at 561. And, contrary to Woodfield Club's assertion, Wiener contested the interpretation, and Woodfield Club's attorney disingenuously stated he interpreted the stipulation the way the trial court did *after* the court announced its interpretation.

It is also evident that Woodfield Club clearly thought the June 23, 2015 date was the "outside limit" of liability. The stipulation was filed six months before trial, and Woodfield Club did not move for summary judgment on a contention that there was no dispute of material fact as to the period of liability. Further, as the trial court observed, going to trial made no logical sense, if Woodfield Club believed that Wiener agreed he was liable for dues until June 23, 2015. Moreover, Woodfield Club's assertion of agreement with the trial court's interpretation of the pretrial stipulation is belied by several of its own filings acknowledging a dispute concerning the date Weiner's obligations ended, as well as its statements at trial. For example, its response in opposition to Wiener's motion for summary judgment stated: "The summary judgment evidence before the Court establishes that *there are material issues of fact as to when Defendant's obligation to pay dues actually ended . . . .*" (emphasis added). Additionally, in its trial memorandum, Woodfield Club stated:

> Based upon the foregoing irrefutable facts the evidence at trial will be conclusive that Defendant remained obligated to pay Club dues *until at least July 18, 2014* because defendant was a record owner of the Woodfield Residence until that date.
>
> . . .
>
> Had Defendant notified the Club that the final divorce decree awarded the Woodfield Residence and the membership to [his ex-wife], the Club would have transferred the Club Membership to [his ex-wife] as of the date of the filing of the divorce decree (i.e. December 4, 2013) and at that point

6

> Defendant's obligation to pay dues would have come to an end.

(emphasis added).

Perhaps most tellingly, in its opening statement, Woodfield Club implicitly indicated that the end date for Wiener's liability was for the trial court to determine when it stated that the evidence would show that Woodfield Club was not notified (1) when Wiener's divorce became final, (2) when the house had been awarded to his ex-wife, or (3) that his ex-wife had filled out an application for membership, suggesting three possible dates for the termination of Wiener's liability.

Furthermore, paragraphs F, G, and H of Section III of the pretrial stipulation framed questions to be decided in terms of whether Wiener's financial obligation to pay for his membership or his right to enjoy the use of the facilities were "terminated," "altered," or "extinguished" by the final judgment of dissolution of marriage or the court order granting his ex-wife exclusive use and possession of the residence. Paragraph I framed the question as whether his obligation to pay for membership continued until Woodfield Club issued a new membership to the third-party purchaser of the residence. Those paragraphs within the pretrial stipulation are completely inconsistent with the notion that Wiener agreed his obligations continued until the third-party purchaser acquired the property.

All of these instances in which Woodfield Club acknowledged a dispute regarding the ending date of Wiener's obligations lead us to conclude that the trial court judge did not construe the stipulation "in accordance with its spirit, in furtherance of justice, in the light of the circumstances surrounding the parties, and in view of the result that they were attempting to accomplish." *Travelers*, 576 So. 2d at 1350. Because the trial court did not take into account the intention of the parties, cutting off all argument regarding the intent of the stipulation, we determine that Wiener was denied a fair trial. Thus, we reverse the final judgment and remand the case for a new trial.

*Reversed and remanded for a new trial.*

LEVINE and FORST, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

7